**UNITED LAND & IRRIGATION CO. et al. v. FLEMING et al.   (No. 6449.)**

(Court of Civil Appeals of Texas.   San Antonio.   Nov. 23, 1920.   Rehearing Denied Dec. 22, 1920.)

**1. Fraud ☞35—Vendee held not precluded from complaining of fraud pleaded in former action compromised.**

Where, in a suit on vendor's lien notes, the vendee filed a cross-action for cancellation of the notes for fraudulent representations and the parties adjusted their differences by making a new contract but the vendee brought a new action to cancel the notes under the new contract and for damages, he was not precluded from setting up and proving the fraud pleaded in the earlier action in connection with the alleged fraud inducing the second contract.

**2. Fraud ☞35—Representation held a continuing representation entering into new contract adjusting differences.**

Where one of the false representations inducing a purchase of land related to an expenditure for betterments on a pumping plant for the irrigation of the land and such expenditure was never made and the pumping plant became a failure, the representation might be regarded as a continuing misrepresentation entering into a new contract between the parties in adjustment of their differences under the original contract.

**3. Fraud ☞64(1)—Waiver held question for jury.**

In a suit to cancel vendor's lien notes and for damages for fraud in connection with a contract in adjustment of differences under an earlier contract, where the evidence was in conflict as to whether the vendee had knowledge of the facts and waived the fraud when he entered into the new contract, the issue of the value of the property at the date of the new contract was properly submitted to the jury.

**4. Fraud ☞64(5) — Reliance on representations held question for jury.**

In a suit to cancel vendor's lien notes and for damages for false representations inducing the contract, which was executed in adjustment of differences under an earlier contract, the question whether the vendee in making the new contract relied on representations previously made *held* properly submitted to the jury.

**5. Fraud ☞65(1)—Preliminary understanding to compromise agreement held a material issue.**

In a suit to cancel vendor's lien notes and for damages for false representations in connection with the contract, executed to adjust differences under an earlier contract, a preliminary understanding *held* to become a material issue in the case when disputed by defendant.

**6. Appeal and error ☞742(6)—Assignment of error overruled where error complained of or injury therefrom did not appear.**

Where it does not appear from the assignments, propositions, bill of exception, and statements just what the error asserted by a proposition was or how appellant was injured by the special issue complained of or its answer, the assignment will be overruled.

**7. Appeal and error ☞743(1)—Assignment of error not considered when charge complained of not set out in bill of exception referred to.**

An assignment of error complaining of a charge cannot be considered, where the assignment refers to a particular bill of exception for the charge and the charge is not there set out.

**8. Fraud ☞65(3)—Representations and falsity held material issues.**

In a suit to cancel vendor's lien notes and for damages for false representations, the questions whether an irrigation company had placed betterments on the canal properties by which the land was irrigated, and whether one of the inducing causes of the purchase was a representation that the land could be irrigated and that the company had arranged for betterments and improvements, *held* material issues.

**9. Appeal and error ☞742(1) — Propositions held insufficient to present questions as to measure of damages.**

In a suit to cancel vendor's lien notes under a contract in adjustment of differences under an earlier contract and for damages for false representations, propositions under assignment of error *held* insufficient to present any question as to the measure of damages, or

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the question whether they should be measured as of the date of the earlier contract or the date of the second contract.

**10. Appeal and error ⚖➤216(2)—Party not requesting charge could not complain that it was too general.**

Defendant could not complain that a charge was too general and left it to the jury to search out the important issues, where he did not suggest any better charge.

**11. Appeal and error ⚖➤232(3)—Court confined to objections taken where there is no fundamental error.**

Where no fundamental errors are shown, appellate court is confined to the objections to the charge taken at the time.

**12. Fraud ⚖➤62—Judgment for damages held not erroneous, though representations did not apply to particular parcel of land.**

In a vendor's action to cancel vendor's lien notes and for damages for false representations, including representations as to the irrigation of the land, judgment for damages respecting one parcel of the land *held* not erroneous, though there was no representation as to the irrigability of such land and no contract that it was to have the benefits of irrigation as the other land; the land having been purchased as a whole.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by E. H. Fleming and others against the United Land & Irrigation Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Amos Rich and Canales & Davenport, all of Brownsville, for appellants.

Seabury, George & Taylor, of Brownsville, for appellees.

COBBS, J. This suit was instituted by appellees against appellants to cancel four vendor's lien notes, representing the purchase price for lands in Cameron county, aggregating $30,000. They were executed by appellees and delivered to appellants, being the difference in value of lands conveyed by appellants to appellees in Cameron county in exchange for land which appellants received from appellees, situated in Lampasas county; the Lampasas county land being valued and estimated as $60,000. Appellees pray that the title to the Cameron county land be conveyed to him free from the lien expressed in the deed securing said notes, for cancellation of the notes and for judgment for the amount of the note on block 401, amounting to $3,875, and for the difference in money value between the contract price of said Cameron county land and its actual value, being the value placed upon said Cameron county land over and above the value placed on the Lampasas county land.

The ground for cancellation of the notes was upon the allegation of fraud and mis-representation as to the land, its value, and capacity for being irrigated; appellant having represented that the land was subject to and was already under a system of irrigation, except as to block 401, as to which there was no representation as to its irrigability.

Appellants interposed defenses by pleas and answers.

The case was tried, with a jury, upon special issues submitted to them by the court, and, the findings and the answers being favorable to appellees, judgment was entered in favor of appellees. The judgment canceled the vendor's lien notes executed by appellees in favor of appellants as part payment for the three parcels of land sold as irrigated land, aggregating $28,123.50. It relieved appellees from personal liability on the vendor's lien note, the purchase money for block 401, in the sum of $3,876.50. It canceled the deed of trust executed as additional security and rendered a money judgment in favor of appellees against appellants for the further sum of $10,759.89.

The facts appear to be that on or about the 28th day of January, 1915, appellants and appellees entered into a written agreement for the exchange of lands in Cameron and Lampasas counties. Appellants were to convey to appellees the lands in Cameron county, alleged to be watered by the Indiana Co-operative Canal Company; deed with vendor's lien notes to be executed representing difference in value of the land, with a deed of trust lien also as additional security. The notes to be secured were of the value of $30,000, due on or before five years from date, with 8 per cent. interest per annum. The privilege was granted of subdividing the lands and selling them upon usual terms in such cases. Block 401 was conveyed without any water rights whatever, with an easement, however, for canal crossing block 400 to the Rio Grande river, with the right to establish a pumping plant and take the water from the river through said canal. Block 401 was taken as 80 acres, price $150 per acre, and all the other land valued at $150 per acre which was conveyed with water rights.

The difference in value in exchange for the deal over and above the notes was paid in cash. The farm land of the Lampasas tract consisted of about 2,165½ acres and was taken at $35 per acre. The residence lot, with tools, implements, stock, and personal property, was estimated at the gross value of $15,000. It was taken subject to an indebtedness against it of $25,000. Taxes and water charges were to be paid by the respective owners and abstract furnished by each to the other within a certain time. Each party was allowed to take possession of the purchased property, and appellants took possession of the Lampasas property. After the agreement

was made, appellants for many months delayed completing the title to the Cameron county land to the satisfaction of the attorney of appellees, and during which time appellees did not take possession of any of the Cameron county land, because they had purchased the same and established an office in Brownsville for the purpose of selling and exploiting these lands, which, for the reasons stated, they were not able to do. Pending the delay much correspondence was had between the parties and conferences which lasted through a period of two years. In the meanwhile appellees left Brownsville for Houston, Tex.

During this time appellants filed a suit against appellees on the contract of January 28, 1915, in Brownsville, to collect said notes, whereupon appellees answered and by cross-action sued to cancel said notes and recover against appellants a personal judgment on the ground of fraud and misrepresentation.

Thereafter, seeking to adjust their differences, an understanding was reached whereby the claims asserted by appellees in the said cross-action, together with the suit, were to be dismissed, and appellants agreed to take, and did take the Lampasas county property in the trade at the agreed price and valuation of $60,000. Appellants already had the title and were in possession thereof, so that all questions in respect to the Lampasas lands were eliminated. In pursuance therewith a written contract was drawn up and executed between them, but no mention was made of the alleged verbal agreement or of the Lampasas land.

Under the terms of this agreement, deeds to the Cameron county land were executed, dated the 10th day of December, 1917, reciting the notes executed for $30,000 with the express lien reserved in the deed; but these new notes, of course, had the dates and date of maturity changed as of the execution of the deeds aforesaid, on the 10th day of December, 1917. The agreement at the very outset recites as though it were an original one between E. H. Fleming and Lorena S. Fleming, his wife, as first party, and United Land & Irrigation Company, as second party, on 10th day of December, 1917, selling the same land in Cameron county, as described in the contract of January 28, 1915. The deeds reserving the vendor's lien on the notes described to secure the payment were delivered to E. S. Hunt, trustee for second party. The first note was for $11,498.50, due December 10, 1922, with 6 per cent. interest, for 229.97 acres of land. The second note was for $8,157.50, due December 10, 1922, with 6 per cent. interest per annum, for 163.15 acres of land. The third note was for $8,467.50, due December 10, 1922, with 6 per cent. interest, for 100.6 acres of land. The fourth note was for $3,876.50, due December 10, 1922, with 6 per cent. interest, for block 401. The parcels of land sold are properly described, and each

excepts a right of way for roads, drainage ditches, and canals. The agreement provides for sale in small tracts and releases. It provides for subdivision of said lands, and sale for cash or credit and releases by substituting new notes of purchase and release.

The appellees agreed to pay all water rents and taxes before they became delinquent during the year 1918, before December 10th, or any subsequent year during the life of this contract. In event first party, appellees, fail to pay and defaults therein, they will voluntarily reconvey any and all unsold land to second party, appellants. It provides appellants were to furnish abstract, tax certificates up to December 31, 1917, showing payment of taxes and water rents to that date. The agreement is dated December 12, but in the beginning shown to be of date December 10th, and is spoken of as of that date. This agreement refers to no other trade, suit, or lands, and upon its face purports to be a complete trade and transaction. Three of the deeds executed by appellant to appellee on December 10th have a similar provision, as follows:

"This sale and conveyance is made subject to all the terms, conditions, stipulations, agreements and reservations of a certain water contract made by and between United Land & Irrigation Company and the Indiana Co-operative Canal Company, whereby and wherein the said Indiana Co-operative Canal Company covenants and agrees to deliver water for, to and upon the lands in said contract described, including the land hereby conveyed, under and upon the terms and conditions set forth in said contract. Said water contract is dated Oct. 1, 1913, and is duly of record in the Miscellaneous Real Estate Records of Cameron County, Texas, in volume B, pages 541 to 553, and reference to same, and to its record, is hereby specifically made for greater certainty as to its contents. The United Land & Irrigation Company hereby conveys all rights to water for the irrigation of the land hereby conveyed and all other rights, privileges and benefits of every kind and character, acquired by it under and by virtue of said water contract in so far as the same applies to the land hereby conveyed, with the full right, power and authority, on the part of the said grantee herein to enforce, receive and enjoy the benefits thereof."

But the fourth deed for 100.6 acres out of the Espiritu Sante Ranch in Cameron county was for a recited consideration of $8,123.50, and a vendor's lien note for $3,876.50, payable December 10, 1922, was executed. This tract has no water rights conveyed with it.

Appellants' first and second assignments complain of the refusal of the court to instruct the jury to return a verdict for them.

The first proposition is:

"Where the rights of the parties are measured by a written contract, not impeached by fraud, appellees cannot attack as fraudulent a novation of the contract more favorable to them than the original."

The second proposition is:

"An action for fraud will not lie in behalf of one who shows by his own evidence that he had full knowledge of the facts concerning which he claims to have been deceived, at the time when the alleged false representations were made to him by the opposite party."

Appellees vigorously urge us, with much show of reason based on authority, that we should not consider these assignments. They contend they are too general and do not point out the evidence wherein it is considered insufficient to authorize the case to go the jury. Indeed, the propositions do not seem to be germane to the facts stated in support of the propositions. The brief contains a statement practically of all the evidence, in the language of the witnesses themselves, on pages 13 to 89, inclusive. Besides this, there is other supporting testimony on the same subject that went to the jury.

[1, 2] It is true that in appellees' original cross-action they alleged fraud. Still that would not prevent appellees from again setting up the same fraud in connection with the alleged fraud inducing them to enter into the contract of December 10, 1917, unless waived by appellees in some way prior thereto, and proving all such statements in connection with the statement as to the capacity of the plant to irrigate the land, it being subject to irrigation and proper supply of water for such purpose, and the further representation of the expenditure of $150,000, provided to be used in betterment of this same pumping plant, to put it and maintain it in proper condition. This expenditure was never made, and the pumping plant became a failure, and the representation as to this feature of the fraud might be called a continuing misrepresentation of fact, a vice which entered into the making of this last contract, so that the fraudulent representations may all be looked to, those in respect to the capacity of the plant, to irrigate the land and the irrigability of the land, to determine the rights of the parties under the contract.

Appellees, on account of appellants' failure to deliver the title, made no effort to sell these lands or make any investigation thereof, relying wholly upon the representations of appellants. So that the appellants in closing this deal by the last-mentioned contract took the Lampasas county land at the agreed value of $60,000, and the appellees at the time dismissed and waived the suit for damages and took the Cameron county land for the agreed price of $30,000 as shown by said contract being the agreed difference in value in the exchange of the lands. The lands in Cameron county were represented to be watered lands and subject to irrigation except the one tract.

[3] The evidence was disputed also as to whether appellees had knowledge of all the facts concerning the prior fraud and thereby waived it when they entered into the contract of 1917 to the extent that they are prevented from raising it in this controversy. It was proper therefore to submit to the jury the issue of the value December 10, 1917; that the notes are for the identical amount in the 1915 contract as in this contract, it being disputed whether the canal was in good shape and would furnish the water. Appellants offer no authority to justify their contention, and we believe there is no merit in their claim. Assignments 1, 2, 3, and 4 are overruled.

[4] We do not think there is any merit in appellants' fifth assignment. It was proper to submit to the jury whether appellees relied on representations made to them by United Land & Irrigation Company through George J. Singer, its agent, and E. S. Hunt, or either of them, in making the purchase of said land on December 10, 1917.

There is no good reason presented to show any error. In fact, there is nothing in the assignment itself, but the proposition stated that it was error for the court to assume in charging the jury that the contract of December 10, 1917, was the one that purchased the land by appellees from appellants, calling it a "novated contract." The contract is the result of a compromise and settlement of the terms of a disputed contract between them, with material changes. There is no reason shown why the fraud that induced the first trade, not being expressly waived, was also material evidence to be considered in connection with fraudulent misrepresentations inducing the making of the 1917 contract in connection with the United Land & Irrigation Company and the Indiana Co-operative Canal Company obligation to irrigate, expressed in the deed and represented verbally at the time, and the further representation that the $150,000 would be spent in betterments. If the covenant expressed in the deed to deliver water could not be carried out and the representations made at the same time were known to be false in connection with the testimony inducing appellees to make the trade and caused them to obligate themselves to the extent they did, they were jury questions, and the court did not err in submitting them. This assignment is overruled.

[5] There is no merit in the sixth assignment. It was claimed that the agreement of compromise was in consideration that appellants would accept the value of $60,000 for the Lampasas county lands (valuing Cameron county lands at $150 per acre) provided appellees dismiss the suit and cross-action and execute the $30,000 notes sued on in this suit to make the trade. If appellants had not disputed this preliminary understanding to the agreement, which it did, there would have been no use to submit it, but by such denial it became a material issue in the case. The reason given as the basis for the objection in the proposition is that the transaction

grew out of the 1915 contract, partly executed by both; that the agreement of December, 1917, was "merely a compromise and adjustment of matters prior to the contract, and error for the court to assume appellants' purchase under 1917 contract and then to submit issues as to the credit of $60,000 on such assumed purchase."

[6] It does not appear, however, from appellants' assignments, propositions, bill of exception, and statements, just what the material error asserted is, or how or in what manner the appellants are injured either by the question or answer. The cross-action was dismissed and no further contention made by appellees for or in respect to the Lampasas county land. This assignment is overruled.

For the same reason we overrule assignment No. 7.

[7] We cannot possibly consider assignment No. 8. It does not set out the charge of the court objected to, but for objection refers us to his bill of exception No. 14, and when we look to it the charge is not set out. Without that, we are without information as to the nature of the error claimed in the charge.

[8] It was a material issue in the case to ascertain whether after December 10, 1917, the irrigation company placed betterments on the canal properties to the amount of $150,000, as represented it would. It was an issue in the case as to whether one of the inducing causes of appellees' purchase was that appellants represented that said land was subject to and could be irrigated, and further that said company had arranged to secure, for the purpose of placing betterments and improvements on the system, that sum of money. We overrule the ninth assignment.

[9] The tenth assignment of error is objecting to the same charge complained of in the third assignment. The objection made at the time to the charge is, among other things, that because "the value of the lands described in plaintiff's petition on the 10th day of December is not a material issue in this case, and also because said question wholly fails to sufficiently identify the land referred to therein." The third assignment is too general to mean anything. The proposition under it is:

"* * * the contract for the exchange of lands out of which the controversy arose was made in January, 1915, the value in December, 1917, of a portion of the land exchanged is not material to any issue in the case."

But it does not present any objection as to the measure of damages or as to what time they should be measured. The tenth assignment complains of the refusal of the court to set aside the verdict and is based on the same charge. It is too general to have any meaning, but the proposition is that—

"On that date (no date stated) there was no market for said land, and it had no market value, * * * but the market value of said land 18 months later was from $100 to $200 per acre; a verdict of the jury fixing the market value of said land on said date at $50 per acre is contrary to the overwhelming preponderance of the evidence."

It will be observed that there is no objection urged as to the form of the question or whether the market value of the land should be determined on the date of the first contract, January 28, 1915, or as of the date of the second as submitted—only that "the value of the lands described in plaintiffs' petition on the 10th day of December, 1917, is not a material issue in this case, and * * * fails to sufficiently identify the land referred to therein."

[10, 11] The writer of this opinion has always condemned the practice of trial courts sending the jury, by a too general charge, to search out important issues pleaded rather than make a brief reference to the subject-matter in the pleadings that they are to find. But here the appellant did not suggest to the court a better charge on the issue, if there was any that could be made, to be followed. It suggested none; it is now too late to complain. The rule is very plain requiring parties to call attention of the trial court to the vice, if any, in such charges. He should also himself prepare a charge submitting correct principles of law from his viewpoint to properly present the issue. The evidence covers a wide range, beginning with appellee's residence in Brownsville under the contract of 1915 on down to his removal to Houston, and the contract of December 10, 1917. After eliminating the Lampasas county land by fixing its value in the trade, the difference in the two contracts is not very apparent, as the notes are for the same amount, only differing in dates and interest. No question is presented as to whether, in proving the market value of the land in Cameron county, it should have been confined to January 28, 1915, or to December 10, 1917. No request was made to have the jury confine its findings to market value thereof on both dates. Appellant's proposition under the third assignment, that "the controversy arose in 1915, the value in December, 1917, of a portion of the land exchanged is not material to any issue in the case," does not thereby raise the question of the market value at any particular time, but is a complaint only that certain testimony was not material. There are no fundamental errors shown, and we must be confined to the objections taken at the time.

The eleventh assignment is also overruled. There was evidence introduced that United Land & Irrigation Company, through George J. Singer and E. S. Hunt, on or about December 10, 1917, represented to the plaintiff that the canal system was in good shape and able to water the lands in controversy and those under its system.

All of appellants' assignments from 11 to 24 complain of the action of the court in submitting to the jury issues of fact already discussed and passed upon. Complaints in many instances are made to the form of the question, and in others as to its materiality. In no case does appellant present a single requested charge. No error of law is shown in the submission of the issues nor a single authority cited anywhere in the brief.

We have examined each assignment and each charge and find that they present issues of fact relevant to a proper determination of this case. We have, however, discussed the assignments and considered all the evidence submitted pertaining to this case. This is largely a fact case for a jury, and the issues have been fairly submitted by the court. Having examined and considered all of the assignments down to the twenty-fourth, and finding no merit in them, they are each overruled.

[12] The twenty-fourth, twenty-fifth, twenty-sixth, and twenty-seventh assignments complain of the action of the court in giving judgment for $8,000 as damages in respect to the fraudulent misrepresentations made concerning the irrigability of land described as parcel No. 4 or block 401, because there was no evidence that there were false representations made which affected the value of said parcels of land, because it was purchased as nonirrigated land. The original contract of 1915 expressly stipulated this tract had no water rights, and the deed of December 10, 1917, conveyed no water rights, and appellee stated he knew he got no water rights with it. The view we take of these assignments is that all of this land was purchased together as a whole. It is true there was no direct contract that this particular block was to have the same benefits of irrigation as the other land; but the benefits that it would receive by the irrigation generally must have affected its value, for the purposes for which all the lands were purchased together. While the same recitals are not in the deed to parcel 4, block 401, as are in the others covering the irrigation question, whatever general representations otherwise made in respect to the value of it, and all other representations made concerning the lands inducing or going to influence the trade in a body as to a bargain, are common to all. It would not do in such a case to eliminate part of the lands because part of the fraud did not apply directly to it, in one particular not common to the whole, but did apply in all other respects, that affected all the land which appellee purchased as a supposed bargain and for specific purposes.

It was shown this block was so situated that it might be irrigated from the Rio Grande river, which of itself and its contiguity thereto gave it supposed value. This was a circumstance appellee could, and perhaps did, look to in making his trade or bargain as a whole. The fraud that induced appellee to trade for the irrigated lands likewise induced him to purchase parcel 4, block 401.

It was alleged in the petition that appellee, prior to the institution of this suit, sold block 401, being that part of the purchase called parcel 4. In the purchase of this tract appellant executed to the United Land & Irrigation Company their vendor's lien note for the sum of $3,876.50, dated December 10, 1917, maturing December 10, 1922, interest at 6 per cent. per annum, with 10 per centum after maturity.

The trial court decreed that said note should remain in force as a lien on parcel 4, block 401, of 100.6 acres owned by appellants; but as to appellee the same was canceled as a personal liability. These assignments are overruled.

The twenty-eighth and twenty-ninth assignments have been considered, and the same question raised therein has been discussed and disposed of in other portions of this opinion, and they are overruled.

Having considered all the assignments, we find no reversible error assigned, and the judgment is affirmed.